UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

In re WYNN RESORTS, LIMITED DERIVATIVE LITIGATION,

This Order Relates to: All Actions

Case No.: 2:18-cv-00293-KJD-CWH

ORDER

Presently before the Court is Defendants' Motion to Stay Shareholder Derivative Action (#51). Plaintiffs filed a response in opposition (#62) to which Defendants replied (#71). Also before the Court is Plaintiffs' Motion to Enter Order Denying Defendants' Motion to Dismiss (#72).[1]

I. BACKGROUND

Shortly after publication of an article in the *Wall Street Journal* on January 26, 2018, discussing the alleged misconduct by officers and directors of Wynn Resorts, Plaintiffs Rickey A. Broussard (Case No. 2:18-CV-00293) and the City of Dearborn Heights Act 345 Police & Fire Retirement System (Case No. 2:18-CV-00439) filed derivative complaints on behalf of Wynn Resorts. On March 29, 2018, this Court ordered consolidation of the Broussard and Dearborn actions under the caption In re Wynn Resorts, Limited Derivative Litigation, Case No. 2:18-CV-00293, and appointed the City of Dearborn Heights as Lead Plaintiff in the consolidated action. ECF No. 33 (Mar. 29, 2018 Consolidation Order). On April 27, 2018, Plaintiffs filed a consolidated amended complaint (#38) ("Consolidated Complaint").

The Consolidated Complaint alleges that the directors of Wynn Resorts knew about and did not disclose an alleged pattern of sexual misconduct. See generally ECF No. 38 ¶¶ 1-14.

---

[1] The state court orders are not final orders on the merits that have preclusive effect mandating that this Court deny the motions to dismiss and to stay. Accordingly, the Court denies the Motion to Enter Order (#72).

Particularly, Plaintiffs contend that the directors of Wynn Resorts breached their fiduciary duties by causing Wynn Resorts "to issue public reports to shareholders and gaming regulators alike that concealed adverse material information about the Company's namesake, Steve Wynn. Defendants' false and misleading statements and material omissions breached their fiduciary duties and related legal obligations." Id. ¶ 11. According to Plaintiffs, the directors "exposed Wynn [Resorts] to billions of dollars of losses and risks of loss" associated with the federal securities class action and an application for a gaming license. See id. In addition to alleging purported breaches of fiduciary duties, Plaintiffs also allege that the directors of Wynn Resorts violated Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 by making false or misleading statements in proxy statements that failed to disclose a supposed pattern of sexual harassment and failing to disclose that information to gaming regulators. Id. ¶¶ 151-154.

This action names as defendants the former Chief Executive Officer ("CEO") and Chairman of Wynn Resorts, Stephen A. Wynn ("Wynn"), former Chief Financial Officer ("CFO") and current CEO Matthew Maddox ("Maddox"), General Counsel and Senior Vice President Kimmarie Sinatra, and current or former directors John J. Hagenbuch, Jay L. Johnson, Robert J. Miller, Patricia Mulroy, Clark T. Randt, Jr., Alvin V. Shoemaker, J. Edward Virtue, D. Boone Wayson, and Ray Irani. Id. ¶¶ 25-36. The complaint also names Wynn Resorts as a nominal defendant. Id. ¶¶ 22-24.

On February 20, 2018, five days after the present derivative action was filed, Plaintiffs John V. Ferris and Joann M. Ferris filed a federal securities class action, Ferris v. Wynn Resorts, No. 2:18-CV-00479-GMN-CWH, against Wynn Resorts and individual defendants Steve Wynn, Matthew Maddox, current CFO Craig Billings, and former CFO Stephen Cootey. Similar to this derivative action, the complaint in the securities class action alleges these defendants violated certain federal securities laws—Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5— by allegedly failing to disclose a "pattern of sexual misconduct." Id. ¶ 4. The securities complaint alleges that in numerous public filings, the defendants "had a duty" to disclose details about ongoing alleged sexual misconduct, and that their failure to do so resulted in artificially inflated

prices for Wynn Resorts stock. Id. ¶¶ 4, 73. The plaintiff claims that when "the truth" was supposedly revealed in the Wall Street Journal article, Wynn Resorts stock price dropped, causing investors to suffer losses. Id. ¶¶ 5, 6, 11, 50-52. Just as in this derivative case, the issues raised by the securities class action concern what information the individual defendants had and when, and whether they had any duty to disclose it. See, e.g., id. ¶¶ 4, 23, 71; see also id. ¶ 62 (identifying among the issues to be resolved in the securities case whether the individual defendants caused the company to issue false and misleading statements).

Defendants have now moved to stay this action asserting that proceeding when the related securities class action is pending is not in Wynn Resorts' best interest or its shareholders' interest. Defendants argue that proceeding would divert resources from the securities class action. Moreover, Defendants argue that Plaintiffs in this action, nominally Wynn Resorts, will be seeking to prove the very allegations that it is defending against in the securities class action. This will require Plaintiffs to discredit key witnesses in the securities class action who are needed for Wynn Resorts' defense in this action.

II. STANDARD FOR ISSUING A STAY

A district court has the inherent power to stay cases to control its docket and promote the efficient use of judicial resources. Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936); Dependable Highway Exp., Inc., v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007). When determining whether a stay is appropriate pending the resolution of another case – often called a "Landis stay" – the district court must weigh: (1) the possible damage that may result from a stay, (2) any "hardship or inequity" that a party may suffer if required to go forward, and (3) "and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law" that a stay will engender. Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005). However, contrary to Plaintiff's argument, the Court need not find "exceptional circumstances[.]" Intel Corp. v. Advanced Micro Devices, 12 F.3d 908, 912 (9th Cir. 1993) (analyzing a stay under the Colorado River doctrine which only applies when staying a federal action in favor of an ongoing state court proceeding.) In this action, a stay would be issued in favor of the ongoing, federal securities class action, not the concurrently proceeding

state court derivative actions.

III. ANALYSIS

In this action, the factors weigh in favor of a <u>Landis</u> stay. The hardship and inequity Wynn Resorts would suffer should this case be permitted to proceed now weigh strongly in favor of a stay. A derivative suit allows shareholders to bring claims to enforce a company's rights against its directors. Fed. R. Civ. P. 23.1. In bringing such claims, the derivative plaintiffs are seeking to act as the company's fiduciaries and have a duty to act in the company's best interest. <u>See</u> <u>In re Ormat Techs., Inc. Deriv. Litig.</u>, 2011 WL 3841089, at *5 (D. Nev. Aug. 29, 2011) (staying derivative case in favor of pending securities class action); <u>see also</u> <u>In re STEC, Inc. Deriv. Litig.</u>, 2012 WL 8978155, at *4 (C.D. Cal. Jan. 11, 2012) (same, noting that a plaintiff bringing a derivative action is a "fiduciary and has a duty to act in the company's best interest").

Litigating the derivative action would divert the company's financial and management resources from the pending securities class action. Moreover, proceeding with this action now would require Plaintiffs to prove the very same alleged misconduct that is the basis of the securities class action, and to attack the credibility of witnesses also named as defendants in that action. These efforts—whether or not meritorious or successful—could undermine Wynn Resorts' defense of the securities class action, and courts have stayed derivative actions in favor of securities class actions for this reason. <u>See</u>, <u>e.g.</u>, <u>In re Ormat</u>, 2011 WL 3841089, at *4 (staying federal derivative action in part because "Defendants are witnesses that [the company] will rely upon in the Securities Class Action"); <u>see also</u> <u>Rosenblum v. Sharer</u>, 2008 WL 9396534, at *23-24 (C.D. Cal. Jul. 28, 2008) (staying derivative action because "it seems likely that the officers and director Defendants in the derivative action would be important witnesses in the securities class action, [which] could potentially result in the liability of the officers being imputed to the corporation"; and "denying a stay will potentially cause substantial harm to [the company], the party on whose behalf this derivative action has been brought"); <u>Cucci v. Edwards</u>, 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) (staying derivative action because it "would likely conflict with [the company's] defense" of a securities class action, because plaintiffs "would need to prove allegations that would seriously undermine [the company's]

defense of the class action"); Breault v. Folino, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002) (holding that the company "would be harmed by Plaintiffs' pursuit of this derivative action now" because "Defendants are likely witnesses who [the company] will rely upon in the pending cases" and "Plaintiffs will need to undermine Defendants' credibility to pursue this action"); In re STEC, 2012 WL 8978155, at *4 ("Courts generally stay a shareholder derivative suit until the culmination of a securities class action when the cases arise from the same factual allegations and the evidence in the former could jeopardize the company's defense in the latter.").

These same considerations apply in the present actions. There is no doubt that the federal securities claims are almost identical and will require nearly identical evidence to prove their claims. This puts the nominal Plaintiff, Wynn Resorts, in the position of attempting to prove the claims it is defending in the securities class action. To "avoid undermining the company's defense" in the class action, this factor weighs in favor of a stay. Id.

Further, allowing simultaneous prosecution of this action and the federal securities class action will lead to duplicative litigation and unnecessary waste or use of resources. Not only are these factual allegations virtually identical, but the claims themselves overlap. The alleged factual basis for Plaintiffs' 14(a) claim is the same as the basis for the alleged violations of Section 10(b) and 20(a) in the securities class action case: namely, Defendants' purported omission of adverse material information about alleged sexual misconduct. See ECF No. 38 ¶ 152, Ex. 1 ¶ 4. The legal elements of Section 10(b) and 14(a) claims also overlap almost entirely: both require plaintiffs to prove a material misrepresentation or omission, reliance upon the misrepresentation or omission, and a causal connection between the misrepresentation or omission and plaintiffs' claimed injury. See Rudolph v. UTStarcom, 560 F. Supp. 2d 880, 887, 891 (N.D. Cal. 2008) (identifying elements of Section 10(b) and 14(a) claims); see also City of Monroe Employees Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 674 (6th Cir. 2005) (noting that the SEC has "promulgated the same rule" for both 10(b) and 14(a) and that "violations occur under each section whenever a statement is false or a material omission makes the statements which are made misleading") (citing 17 C.F.R. §§ 240.10b-5, 240.14a-9).

Staying this action would give all parties more complete information regarding whether and how Plaintiffs might pursue their claims which promotes the orderly course of justice. For this reason, "staying the Shareholder Derivative Action pending resolution of the [securities class actions] would promote judicial economy." Cucci, 2007 WL 3396234, at *2; see also In re STEC, 2012 WL 8978155, at *7 (observing that if a company or its directors are exonerated on the grounds that they did not issue materially false or misleading statements, "it is unclear what, if anything, would be left of the derivative action"); Rosenblum, 2008 WL 9396534, at *8. In fact, Plaintiffs also allege that Wynn Resorts may be harmed should an ongoing investigation by the Massachusetts Gaming Commission result in the forced sale of the company's gaming license for the Encore Boston Harbor. See ECF No. 38 ¶¶ 42, 66-67, 111. This allegation, too, favors a stay, given that the purported harm has not happened. The Massachusetts Gaming Commission has scheduled a three-day adjudicatory hearing in April. Should the gaming commission affirm the company's entitlement to its license, this premise for relief is moot. If not, the proceedings before the commission will have crystalized many of the relevant facts necessary for this derivative action.

Finally, the prejudice Plaintiff may suffer as a result of the delay does not outweigh the potential hardship or inequity that may befall Wynn Resorts and does not outweigh the increase in the "orderly course of justice" that will come from the increased judicial economy and the crystallization of the factual issues that will occur. While justice delayed is justice denied, should the shareholder's securities claims be dismissed, Plaintiffs may be spared the expense of pursuing doomed claims. See Rosenblum, 2008 WL 9396534, at *; Baca v. Insight Enterprises, Inc., 2010 WL 2219715 at *5 (Del. Ch. June 3, 2010) ("Because [the derivative] lawsuit seeks indemnification for losses resulting from [the federal securities action], a rational stockholder plaintiff, free from the compulsion to win a first-to-file sweepstakes, would wait until after a ruling on a motion to dismiss [the securities action] before commencing a derivative suit"). Therefore, the Court grants the motion to stay.

IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Stay Shareholder

Derivative Action (#51) is **GRANTED**;

IT IS FURTHER ORDERED that Plaintiffs' Motion to Enter Order Denying Defendants' Motion to Dismiss (#72) is **DENIED**;

IT IS FURTHER ORDERED that all other outstanding motions are **DENIED without prejudice as moot** (they may be renewed after the stay is lifted).

Dated this 29th day of March, 2019.

_____
Kent J. Dawson
United States District Judge